IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CATHY NIETO MARTINEZ,

Plaintiff,

v.                                                     Civ. No. 15-1137 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND**

**THIS MATTER** is before the Court on Plaintiff Cathy Martinez's Motion to Reverse

and Remand the Social Security Commissioner's final decision denying Plaintiff disability

insurance benefits. ECF No. 19. For the reasons discussed below, the Court will GRANT

Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent

with this opinion.

## I.       Background

Plaintiff is a fifty-seven year old woman with a prior work history as an accounts payable

clerk, busser, caregiver, inventory analyst, and usher.  Administrative Record (AR) 196.

Plaintiff filed an application for disability insurance benefits alleging disability on February 15,

2013 due to a "brain tumor which was removed," broken left clavicle, and arthritis.  AR 71.

### A.  Medical History

The following will recount Plaintiff's medical history in so far as it is relevant to the

issues presented in this case.  The record reflects that in April 2012, Plaintiff presented to

Presbyterian Hospital in Albuquerque, New Mexico, following an incident in which she

experienced weakness in her lower left extremity, seizure-like symptoms, and she collapsed

1

while leaving work. AR 300.  Upon examination, Plaintiff was diagnosed with meningioma,

which, in Plaintiff's case, was a benign brain tumor. AR 300, 303.  On April 23, 2012, Plaintiff

underwent successful surgery to remove the tumor.  AR 301, 307.  In a follow-up appointment

one year after the surgery, Plaintiff reported doing "very well" but complained of some

numbness in her left leg, fatigue, tension headaches, and an inability to work full time.  AR 305.

Plaintiff's neurologist, Dr. Christopher Taylor, noted that while Plaintiff's lower extremity

numbness may be permanent, Plaintiff had made an "overall excellent recovery" from the

surgery. AR 665. In an undated letter, Dr. Taylor stated that Plaintiff continued to have "left

lower extremity weakness, which worsens after walking for a prolonged period of time, or when

walking up flights of stairs." AR 697.

   The record reflects that in the months following Plaintiff's surgery, Plaintiff's primary

care physician, Dr. Benjamin Chan, progressively released Plaintiff to return to work on a

reduced schedule. AR 364-70. In June, Dr. Chan indicated that Plaintiff could work half-days.

AR 364. In July, Dr. Chan cleared Plaintiff to work six hours per day. AR 367.  In September,

Dr. Chan cleared Plaintiff to work thirty-five hours per week. AR 370. It appears from Plaintiff's

testimony at the hearing that she resumed working at this time until she was laid off in July 2013.

AR 36-37, 41.

   In December 2012, Plaintiff presented to Presbyterian Hospital with complaints of

shoulder pain.  AR 411. Plaintiff was assessed with a displaced midshaft clavicular fracture. AR

411-13.  In her first appointment with a physical therapist, Plaintiff reported that much of the

pain had subsided but that she still experienced pain with activities and at night. AR 533.  In

further appointments, Plaintiff complained of intermittent and fluctuating pain. AR 531, 527.

Plaintiff also reported increased ability to perform activities of daily living with the exception of

a period of time following an incident in which a person bumped into her. AR 521, 523, 525, 527.  By the end of March 2013, Plaintiff reported overall decreased pain, improved mobility, and tolerance for activities of daily living. AR 514, 519.  By April 2013, Plaintiff's physical therapist noted that Plaintiff had improving passive range of motion and tolerance to activities of daily living. AR 535.

In June 2014, Plaintiff presented to Peak Motion Physical Therapy with complaints of difficulties with range of motion in her thumbs and bilateral hand pain. AR 541-42. Plaintiff indicated that she was experiencing stiffness in her thumbs and "near paralysis at night," as well as generalized stiffness in both hands.  AR 542.  Plaintiff was assessed as having difficulty with ordinary activities of daily living and sleep disturbance due to the pain. AR 542. In August 2014, Plaintiff's physical therapist noted that Plaintiff's functional limitations were sleep disturbances, limited ability to write, and limited ability to drive. AR 545. The physical therapist further noted that Plaintiff had made gains in her grip strength but that her range of motion was inconsistent. AR 546.

In September 2014, Plaintiff presented to Dr. Matthew Patton with complaints of bilateral diffuse hand pain, joint swelling, and trigger thumbs. AR 561-63. Dr. Patton noted that Plaintiff experienced mild tenderness in her hands but that she had a full range of motion. AR 562. Radiographs indicated moderate joint space narrowing and diffuse osteoarthritic changes. AR 562. Plaintiff was given steroid injections and advised to return as needed for further treatment. AR 563. Plaintiff returned to Dr. Patton in March 2015 and reported that her hand pain had gotten worse. AR 644. Dr. Patton performed a trigger finger release of Plaintiff's right thumb. AR 645-647.

On July 9, 2014, Dr. Trang Tran, the reviewing physician at Peak Motion Physical

Therapy, noted that Plaintiff "cannot lift over 10 lbs. at work and she has lower extremity weakness. She cannot work over 25 hours a week." AR 716. Subsequently, after the hearing and the ALJ's decisions had been issued, Dr. Tran issued another note stating that Plaintiff "continues to have daily hands [sic] pain and weakness. She cannot grip/hold objects in her hands." AR 718.

## B. Procedural History

Plaintiff filed applications for disability insurance benefits and supplemental social security income in February 2013 and November 2014, respectively. AR 12. Plaintiff alleged a disability start date of April 17, 2012, which she subsequently amended at the hearing to August 1, 2013. AR 12. Plaintiff's claims were initially denied on October 18, 2013 and upon reconsideration on December 20, 2013. AR 12. Plaintiff subsequently requested a hearing which was held on May 13, 2013 before Administrative Law Judge (ALJ) Eric Weiss. AR 12. On June 19, 2015, the ALJ issued his decision denying Plaintiff's claims. Following the ALJ's decision, Plaintiff submitted additional medical evidence to the Appeals Council, including, as noted above, a medical source opinion from Dr. Tran. AR 4. The Appeals Council subsequently denied Plaintiff's request for review. AR 1-3. This appeal followed.

## II.   Applicable Law

## A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step

4

sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R.

§ 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not

supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in

reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d

799, 800-01 (10th Cir. 1991).  In making these determinations, the reviewing court "neither

reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v.*

*Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III.    Analysis

Plaintiff raises two issues before the Court. Plaintiff first argues that the Appeals Council erred when it failed to find that a note from Dr. Tran submitted shortly after the ALJ's decision was not new and material evidence that required reconsideration by the ALJ. ECF No. 20 at 3. Second, Plaintiff argues that the ALJ erred in according Dr. Tran's opinion "little weight." ECF No. 20 at 6.  Specifically, Plaintiff contends that Dr. Tran's opinion was entitled to greater deference because Dr. Tran was a treating physician and the ALJ failed to provide specific and

legitimate reasons for rejecting the opinion.  ECF No. 20 at 7. Because the Court agrees with Plaintiff's second argument, the Court will remand on this basis and will not consider Plaintiff's first contention.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. 404.1527(c)(2); 416.927(c)(2). This is known as the "treating physician rule." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The idea is that a treating physician provides a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, when supported by the medical evidence and consistent with the record, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

If the treating physician's opinion is inconsistent with the record or not supported by medical evidence, the opinion does not merit controlling weight but still must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is necessary, however, is that the ALJ give good reasons—reasons that are "sufficiently

specific to [be] clear to any subsequent reviewers"— for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two steps. First, the ALJ must find that the opinion is (a) not supported by medical evidence and/or (b) not consistent with the record.  Second, the ALJ must determine what weight to give the opinion according to the above listed six factors.  Like all findings, an ALJ's findings in these two steps must be supported by substantial evidence.

In the present case, the ALJ accorded "little weight" to Dr. Tran's opinion that Plaintiff cannot lift over ten pounds, has lower extremity weakness, and therefore cannot work over twenty-five hours per week.[1] AR 19.  In explaining his reasoning, the ALJ stated that "[t]here was no explanation for the doctor's opinion. Furthermore, the opinion was not consistent with the medical records as a whole or Dr. Tran's physical examinations of the claimant."  AR 19.  In doing so, the ALJ provided a sufficient basis for not giving Dr. Tran's opinion controlling weight.

However, while satisfying the first step in rejecting the opinion of a treating physician, this analysis fell short of what is required under step two.  Under step two, the ALJ failed to sufficiently analyze the above cited factors to determine how much weight to give Dr. Tran's opinion.  In other words, the ALJ did not sufficiently support his decision to reject Dr. Tran's conclusion that Plaintiff could only work 25 hours per week. *See Watkins*, 350 F.3d at 1300 (stating that "resolving the 'controlling weight' issue does

---

[1] The Court notes that because the ALJ limited Plaintiff to sedentary work, his rejection of Dr. Tran's opinion is limited to Dr. Tran's opinions regarding Plaintiff's lower extremity weakness and inability to work over twenty-five hours per week.  However, on remand, the note from Dr. Tran Plaintiff submitted after the ALJ's decision will also be before the ALJ.

not end our review" and that the ALJ must then explain the weight given to the opinion in light of the relevant factors). As further noted in *Watkins*, "[a]fter considering the pertinent factors, the ALJ must give good reasons in [the decision] for the weight he ultimately assigns the opinion…[A]nd if he rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301.

To be sure, for many reasons, including the reasons noted by Defendant, Dr. Tran's opinion regarding Plaintiff's limitations may certainly be susceptible to legitimate criticism.  The ALJ's opinion, however, failed to provide sufficient justification for giving little weight to Dr. Tran's limitation on work hours; therefore, this case must be remanded for further review consistent with this Opinion. *See Id.* (stating that a court must remand when it "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.").

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand to Agency (ECF No. 19). The Court therefore reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings consistent with this Opinion.

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent